IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EASTERN SHORE MARINE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 08-0023-CG-C |
| ) | |
| MICKEY PLATT, ) | |
| ) | |
| Defendant. ) | |

### ORDER

This matter comes before the court on the Plaintiff, Eastern Shore Marine, Inc.'s ("ESM") motions for summary judgment. (Docs. 57, 58, 61, and 62). Mickey Platt ("Platt") filed a written response to the motions and ESM replied. (Docs. 67 and 71).

I.   THE ALLEGATIONS

ESM alleges that it entered into an oral agreement with Platt to repair a Viking 47motor vessel that Platt owned (the "Viking 47"). (Doc. 1, p. 1, ¶¶ 4 and 5). Platt allegedly maintained an open account with ESM, pursuant to which ESM performed $16,626.83 worth of repairs and supplied $1,049.59 worth of fuel. (Doc. 1, pp. 1-2, ¶¶ 6 and 7). Platt only paid a total of $4,264.54 on the repairs, leaving a balance due of $12,362.29, plus interest, on the repairs. (Doc. 1, p. 2, ¶¶ 7 and 10).

Platt filed a counterclaim with his answer, alleging that ESM took too long to begin repairing the Viking 47, causing Platt to lose the use of his Viking 47, and that the repairs ESM did make were unsatisfactory, forcing Platt to sell the Viking 47 for "below the value it would have had, had the repairs been performed correctly by" ESM. (Doc. 5, p. 4, ¶¶ 2, 3, and 4).

## II.     SUBJECT MATTER JURISDICTION

The complaint alleges that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.  (Doc. 1, p. 1, ¶ 3).  Platt denies that this court has jurisdiction but has not filed any motionsto dismiss on that basis.  (Doc. 5, p. 1, ¶ 3).  Although Platt has not sought to dismiss the complaint for lack of subject matter jurisdiction, the court addresses the issue sua sponte.  See, e.g., Blizzard v. Food Giant Supermarkets, Inc., 196 F. Supp. 2d 1202, 1203 n.1 (M.D. Ala. 2002) (recognizing a district court's independent duty to examine subject matter jurisdiction).  See also Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1279-80 (11th Cir. 2001) (same).

> Federal admiralty jurisdiction derives from Article III, Section 2, of the United States Constitution, which extends the judicial power of the United States "to all Cases of admiralty and maritime Jurisdiction."  Pursuant to that grant of jurisdiction, Congress enacted 28 U.S.C. § 1333(1) wherein it vests district courts with original and exclusive jurisdiction over "any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

M/V Sea Lion V v. Reyes (In re Sea Vessel), 23 F.3d 345, 347-48 (11th Cir. 1994).

Although the fact that a vessel is involved is not alone enough to implicate admiralty jurisdiction, see  Clements v. Preston, Civil Action 05-0209-WS-M, 2005 U.S. Dist. LEXIS 34414, **19-23 (S.D. Ala. 2005) (discussing, and citing cases regarding, admiralty jurisdiction), "[f]ederal admiralty jurisdiction is invoked by a claim that an oral contract regarding the repair of a vessel was breached."  Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1249 (11th Cir. 2005).  See also Diesel Repower, Inc. v. Islander Invs., Ltd., 271 F.3d 1318, 1322-23 (11th Cir. 2001) ("A contract to repair a vessel invokes admiralty jurisdiction.").  ESM's claim and Platt's counterclaim both allege breaches of an oral contract regarding the repair of a vessel, so this court has original subject matter jurisdiction over the claim and the counterclaim pursuant

to § 1333

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As the Eleventh Circuit succinctly stated:

> A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted). The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the district court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002). The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817 (1995).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." Ryan v. Int'l Union of Operating Engrs, Local 675, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in

>   summary judgment are deemed abandoned.  <u>Road Sprinkler Fitters Local Union
>   No. 669 v. Indep. Sprinkler Corp.</u>, 10 F.3d 1563, 1568 (11th Cir. 1994)(citing
>   <u>Lazzara v. Howard A. Esser, Inc.</u>, 802 F.2d 260, 269 (7th Cir. 1986)), cert.
>   denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

<u>Id</u>. at 599.  The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex Corp.</u>, 477 U.S. 323.  The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law.  <u>Id</u>. at 323.

## IV.    RELEVANT FACTS

ESM is the movant on both motions for summary judgment, so the court construes the facts in Platt's favor.

### A.    The Agreement

Platt purchased the Viking 47 on March 20, 2006.  (Doc. 60-2; Doc. 67-2, pp. 2-3).  At the time Platt purchased the Viking 47, it had sustained damage to its hull, hardtop, and other areas while it was berthed at Dog River Marina during Hurricane Katrina.  (Doc. 67-2, pp. 4-5, 29).  Shortly thereafter, Ed Wall ("Wall"), the owner-manager of ESM, met Platt at the Dog River Marina to inspect the Viking 47.  (Doc. 58-4, p. 9; Doc. 58-8, p. 2).  Wall and Platt agreed that ESM would repair all damaged areas on the exterior surface of the boat for $7,700.  (Doc. 57-2, pp. 9-13, 28-29, 33-34; Doc. 67-3, p. 6).  ESM asserts that it warned Platt that the gelcoat repairs would not match the existing color of the boat.  (Doc. 60-13; Doc. 60-14, p. 2).  Platt flatly denies that he was so warned.  He says he opted to have gelcoat repairs made to his boat because he understood from ESM that the gelcoat patches would match the existing color of the Viking 47.  (Doc. 67-6, p. 1, ¶¶ 1-3).

According to Platt, ESM's efforts to repair the Viking 47 fell short of his expectations, in

4

part because the gelcoat did not match the existing color of the boat. (Doc. 67-2, pp. 23 and 27). Jim Greene ("Greene"), Platt's expert witness, opined that ESM's "methods of repair by using gelcoat resulted in noticeable deficiencies in the paint job." (Doc. 60-11, p. 3, ¶ 3). Greene also testified that it is difficult, but not impossible, to match gelcoat patches with existing gelcoat, and that ESM did a particularly poor job. (Doc. 67-7, pp. 11-13, 16-17, and 21-23). In addition to not matching the color of the gelcoat with the color of the vessel very well, Greene said that ESM's repairs were unsatisfactory because there was a visible "build up" of gelcoat in the patched areas. (Doc. 67-7, p. 23).

Keith Mitchell ("Mitchell"), a paint and fiberglass technician at ESM, testified by affidavit that he spoke with Platt while ESM was repairing the boat with gelcoat. (Doc. 60-13). As the first gelcoat patch was being performed, Platt expressed concern to Mitchell about the color of the gelcoat and Mitchell explained that the gelcoat would not exactly match the existing gelcoat. (Doc. 60-13). Mitchell says he told Platt more than once that the only way to eliminate the color difference from the gelcoat was to paint over the gelcoat patches. (Doc. 60-13). According to Mitchell, Platt told Mitchell to forego painting over the gelcoat patches. (Doc. 60-13). Platt says Mitchell did not tell him that the gelcoat would never match. (67-6).

The parties also entered into an oral contract to remove the name on the vessel. (Doc. 67-2, p. 8). Platt steadfastly asserts that he never agreed to an open account and that any additional work ESM performed was without Platt's knowledge or consent. (Doc. 67-3, p. 6).

Platt eventually paid ESM $4,450.68 for its work. (Doc. 58-12).

### B. The Boat's Value and Subsequent Sale

Platt paid $250,000 to purchase the boat. (Doc. 60-2). The person who sold Platt the

boat also received $175,000 from her insurance company to compensate her for the damages that the boat sustained during Hurricane Katrina. (Doc. 60-3, pp. 10-11). Prior to Platt's purchase, he had Woodruff Marine Surveying & Consulting, Inc. ("Woodruff") survey the boat. (Doc. 60-3, pp. 5-6). Woodruff issued a report on March 3, 2006, in which it valued the boat at $360,000. (Doc. 60-4, p. 13; Doc. 60-6).

After ESM finished the work it performed, Woodruff evaluated the boat again on July 20, 2006. (Doc. 58-13, p. 1). It valued the boat at $410,000. (Doc. 58-13, p. 3; Doc. 60-6).

Platt decided to sell the Viking 47. He sold it though Greene, a broker at Marine Group Gulf Coast, Inc. ("Marine Group"). (Doc. 60-3, pp. 23-24). Greene facilitated the sale to Jeff Claunch ("Claunch"). (Doc. 67-7, pp. 4-5). Platt testified that he opted to have Greene sell the boat for him, rather than to sell the boat himself, because he did not have the time to market the boat properly. (Doc. 60-3, pp. 23-24).

Claunch had M.J. Schiehl & Associates, Inc. ("Schiehl") survey the boat on October 6, 2006. (Doc. 60-7, p. 2). Schiehl valued the boat at $429,000. (Doc. 60-7, p. 7; Doc. 60-8, p. 2). Claunch purchased the boat by paying $200,000 in cash and trading in his own boat with an estimated value of $175,000. (Doc. 67-7, pp. 5-6; Doc. 60-9, p. 9). Although the Marine Group received $375,000 in total consideration for the sale, it paid Platt $300,000 in consideration. (Doc. 60-3, p. 16).

After Greene sold the Viking 47 to Claunch, he entered into a "refit contract" with Claunch. Greene billed Claunch $103,493.77 for the refit work, but Greene and Claunch negotiated a lower payment. (Doc. 60-10; Doc. 67-7, pp. 6-7). Prior to Claunch's purchase of the vessel, Greene and Claunch discussed the fact that Claunch could afford to invest in a paint

job on the boat due to the low purchase price of the boat.  (Doc. 60-5, p. 19).

According to Greene, the value of the Viking 47 after ESM repaired it was approximately $350,000.  (Doc. 67-7, p. 8).  His valuation was based on the fact that it would cost between $80,000 and $90,000 to remedy the deficient patches.  (Doc. 67-7, p. 15).  Greene's expert report shows that the Viking 47 would have been worth $50,000 more if the gelcoat repairs were properly made.  (Doc. 60-11, p. 3, ¶ 3).  During his deposition, Greene testified that the value of the Viking 47 would have been "more" if the gelcoat patches were applied properly, or $450,000 if the gelcoat patches were not visible at all.  (Doc. 67-7, pp. 23-24).

## V.    ESM'S CLAIM FOR BREACH OF CONTRACT

In order to recover on a claim for breach of an oral contract to repair a vessel, ESM "must prove (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages." Sweet Pea Marine, 411 F.3d at 1249.  The terms of the contract are in dispute, including the extent of the repairs that the parties envisioned, the presence or absence of an "open account," and the expected results of the gelcoat repairs, precluding summary judgment in ESM's favor.  ESM's motion for summary judgment on its breach of contract claim is **DENIED**.

## VI.   PLATT'S COUNTERCLAIM FOR DAMAGES

Platt alleged that he is entitled to damages for loss of use of his vessel because ESM took too long to repair it.  Magistrate Judge Cassady dismissed that allegation on September 22, 2008.  (Doc. 51).  ESM's motion at bar also argues that it is entitled to summary judgment on this claim.  Platt does not address this claim in his response to the motion for summary judgment and, in any event, never objected to Magistrate Judge Cassady's ruling.  The court hereby **ADOPTS**

Magistrate Judge Cassady's September 22, 2008, order which, among other things, dismissed Platt's claim for loss of use of the Viking 47.

Platt also made a claim for attorney's fees.  ESM argued that the law does not provide for an award of attorney's fees.  Platt did not respond.  As explained above, "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."  Resolution Trust, 43 F.3d at 599.  The motion for summary judgment on the claim for attorney's fees is **GRANTED** because Platt abandoned his claim for them.

The remaining claim alleges that Platt sold the vessel for less than he could have if ESM performed the repairs correctly.  ESM directs the court to a legal standard for ascertaining damages that does not apply in the context at bar.  It cites to several cases which variously state the legal rule that "[w]here a damaged vessel is not a total loss, the owner is entitled to recover the reasonable cost of repairs necessary to restore it to its precasualty condition."  THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 14-6 (4th ed. 2004).  This statement of damages applies "[w]hen a vessel is damaged in a collision or other marine casualty."  Id.  See also Pan-American Petroleum & Transport Co. v. United States, 27 F.2d 684, 685 (2d Cir. 1928) (applying this measure of damages in a collision case); The Baltimore, 75 U.S. 377, 383, 385-86 (1869) (same); TVA v. Vulcan Materials Co. (In re Crounse Corp.) , 956 F. Supp. 1377, 1380 (W.D. Tenn. 1996) (same).  Although it is true that the Viking 47 was damaged during Hurricane Katrina, the allegation against ESM has nothing to do with a collision or other marine casualty.  It is based on a breach of the agreement to repair the hull of the boat.

As Platt points out, in general, the measure of damages in a breach of contract case

arising under admiralty law is "the amount necessary to put the injured parties in the exact position they would have been in had there been no breach." Seguros Banvenez, S.A. v. S/S/ Oliver Drescher, 761 F.2d 855, 860-61 (2d Cir. 1985) (breach of admiralty contract in a loss of cargo case); Jessica Howard v. Norfolk S. Ry., 316 F.3d 165, 170 (2d Cir. 2003) (describing Seguros Banvenez as "stating that in admiralty law 'the correct measure of damages . . . is the amount necessary to put the injured parties in the exact position they would have been in had there been no breach,' which 'in loss of cargo cases . . . generally means the market value of the goods at the time and place they were to have been delivered[.]'") (ellipses in original, other alteration supplied); Todd Shipyards Corp. v. Auto Transp., S.A., 763 F.2d 745, 756 (5th Cir. 1985) (admiralty case holding that party "was entitled to be put in the same position it would have occupied had the repair contract been performed"); Putnam v. Lower, 236 F.2d 561, 572 (9th Cir. 1956) (holding that the "prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained" in an admiralty case).

In this case, the parties disagree about how much of the allegedly diminished sale price of the Viking 47 is attributable to the quality of the gelcoat repairs. Each side has experts testifying differently on the value of the vessel and each side points to a different cause for the relatively low selling price of the boat. There are genuine issues of material fact on this issue. The motion for summary judgment on the counterclaim for the diminished sale price of the vessel. is **DENIED**.

**DONE** and **ORDERED** this 23rd day of February, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE